May it please the court. My name is Stuart Weltman. I'm here on behalf of the appellant. There are numerous reasons why reversal of the district court's order is warranted here. But probably if we want to focus in on the central question, it's really a question that revolves around what are the procedures that the King Biocourt set forth. I think that the district court's approach is an outlier that's erroneous. I think most of the district courts in the circuit get it. But she, the court, decided that there was no guidance from the King Biocourt as to what the process, the burdens were. And because of that, I think she, the court, committed an error. So the Fourth Circuit in the GNC case set out that standard for scientific evidence and false claims. And her, the district court's ruling followed that fairly closely. So what's wrong with the GNC's approach? Well, there are two things in that answer, Your Honor. First, before I get to the GNC's approach, which I think is incorrect, the court below did not apply it correctly for the simple reason that it had to somehow cabin our complaint as only pursuing a falsity claim when we clearly were pursuing both falsity and misleading or deceptive. And, of course, the GNC court allows, on the evidence that we presented here, clear what would allow us to proceed. But if you want a more general question of what's wrong with the GNC opinion in general, I think, and I was one of the minor counsel of record in that case, and we watched in shock as the Fourth Circuit sort of, I think, butchered the CLRA and the UCL and King Bio. I guess the best- If we rule in your favor, are we going to create a circuit? Sorry? That's okay. If we rule in your favor, are we going to create a circuit split with the Fourth on this issue? Well, no. No. I don't think there's a circuit split at all if you rule in our favor, because if you want to take a very narrow approach and not want to get into duking it out with the Fourth Circuit- Well, it'd be duking it out with the Supreme Court. Right. Exactly. Exactly. And we don't like to do that. And I understand that. We usually lose those fights. Well, sometimes. I hope not as often as- Well, help us distinguish GNC. Is GNC, were they looking at multi-states? And in the GNC opinion, did the Fourth Circuit squarely address what the California Supreme Court would do with the standard and how you judge the scientific evidence? Your Honor, I've read that opinion many times, and I'm not sure exactly what they were holding. I think we- Well, there was nothing that said they boldly predict what the California Supreme Court would do. Right. And that's what I think we're being asked to do, to boldly predict what the California Supreme Court would do. Well, I guess that's absolutely what you have to do. I think they did try to apply the CLRA in UCL and King Bio. I think that I could tell you what I believe is the appropriate approach in King Bio and show how I think they erred. But in terms of the question that Judge Tallman posed, there is a narrow path that would avoid conflict, and that is we did allege misleading conduct. We did argue misleading conduct in our summary judgment papers. And in order for the district court to enter summary judgment against us under GNC, the court had to, I think, disingenuously cabin our complaint and our case into a falsity case when it's dual. It's both falsity and misleading. And that's because, of course, the court didn't discuss it, but we clearly meet the false and misleading criteria that the GNC court set forth. We have an expert, the only qualified brain expert in this case, who did a weight-of-the-evidence approach and has concluded that the weight-of-the-evidence is clearly against Ginkgo biloba having any effect at all. Their experts admittedly didn't even do that. So, quite frankly, from our perspective, if GNC were to be what the court fouled here, we should get summary judgment because they didn't even rebut our expert, even if their experts were qualified, which they aren't. So is this an abuse of discretion in the Daubert gatekeeping function by the district court that the district court should have declared that Costco's experts were not qualified to render an opinion and, therefore, the evidence offered by your better qualified expert stands unrebutted? No, although that should have been one of the court's rulings. I understand that. The case, the summary judgment ruling, if we're going to just follow GNC and not try to butt heads with the Fourth Circuit, the summary judgment ruling is erroneous because we did prove in all four corners a misleading case under the GNC opinion. We presented a weight of the – that the misleading claim under GNC is proven through a weight-of-the-evidence analysis. And if, however – and, again, I submit the record's clear – both of the defendant's experts stated they were not doing a weight-of-the-evidence analysis, all they said they did was look for some evidence. So if that's the case, if you're not – well, I guess your answer is, and a jury has to decide the factual dispute. Well, we think we should have gotten summary judgment in our favor, but putting that aside, the answer is yes, of course, under this record, at a minimum, a fact finder. Why? Because we have, at best, giving the defendants the vest, we have dueling experts, at best. Okay? And I think that's the big issue here. If we're going to focus solely on the misleading prong and ignore trying to find why GNC court was erroneous on their falsity issue, when you have experts that, quote, disagree, although we don't even think their experts disagree with our experts because they didn't do a weight-of-the-evidence approach, but let's give them the benefit of the doubt there and say they did one. Let's assume that both sides' experts disagree on the weight-of-the-evidence. That goes to a fact finder. That's under GNC. And unless we're going to just create a whole new rule for consumer fraud cases that says the plaintiffs have the full burden of establishing everything, but then all the defendants have to do is come up with some evidence, whatever that might be, that controverts it. And even if it's not reliable evidence ---- A question about the falsity claim. Yes. It seems like the district court judge used a standard of conclusivity as opposed to preponderance of the evidence on the California statute. Which is the right standard? Oh, preponderance, for sure. I mean, King Bio was after a trial. Okay? It's a preponderance standard. Why should there be a different rule for a consumer fraud case? Where does that come from, then? Where does the preponderance ---- Where's the what? Preponderance standard come from that should have been applied according to ---- That should be applied to our case. Where does that ---- where do you get that standard? What law do you rely upon? Well, I can't cite the law because I just thought it was a basic rule that in civil cases the preponderance of the evidence standard applies unless there is some other rule that's been adopted or statute. And here, I think to apply any ---- I'm sorry. I thought California statute provided in civil cases that the standard is preponderance of the evidence. I believe so. Okay. I think there is. I mean, California codifies everything, including rules of evidence and burdens of proof. We did that. Just so we can talk about it, it's California Evidence Code Section 115. Thank you, Your Honor. I didn't really look at that. I'll admit it. I just assumed that the ---- you know, I'm not aware of ---- But isn't the theory that GNC held and that the district court adopted, the theory is you can't prove by the preponderance that a scientific claim is false so long as there are scientists that hold the opposite, have reached the opposite conclusion. And here, although the scientists for Costco were not necessarily specific experts in this area, they were ---- the district court found they had sufficient expertise to look at the scientific literature and say there are at least some scientists who say this Ginkgo has some effect. And so the district court, I didn't see anything saying it's a conclusive standard. I thought the district court held you cannot show by a preponderance this falsity claim when there's opposing scientific opinions. And that's what GNC held, too, I believe. For the falsity issue, that's what GNC held, and that's why I take issue with GNC, because I don't think there should be any different evidentiary standard under the UCL or CLRA for proving up a falsity claim. So GNC didn't cite any case for that standard. And so are you aware of any case or any support for that position that's impossible to show to prevail on a falsity claim if there's science stating otherwise? Is there any support or any other case that aligns with GNC that GNC was relying on? Because GNC doesn't cite anything. Well, I don't believe there's any circuit court opinions. There may be a few district courts that have applied it. And I'm not aware of anyone that's applied it 100 percent. You have some that have tried to work around it, like I forget the judge now, in Mullins v. Direct Digital. I thought that was a fairly ingenious opinion, but essentially the judge was just trying to work around it so that he didn't or she didn't effectively overrule a circuit court. But I'm not aware of any circuit courts that have adopted this. Mr. Willman, isn't the analogy between falsity and fraud, which requires a higher standard of proof versus misleading, which you urge should be the preponderance, isn't that the distinction? Well, I mean, there's no doubt about it in common law fraud that we have to prove fraud by clear and convincing evidence. But this is a statutory fraud, and they've made it very clear that that's not the standard. Every consumer fraud— But your theory is that the product was marketed knowingly by the defendants who knew or should have known that this product does nothing to assist in good brain health. No. That's a— On the falsity part. On the falsity claim, under the Consumer Fraud Act, the UCL and the CLRA, intent is not the intent to defraud. The intent is whether or not they intended to make the challenged misrepresentation. It's a different intent— Well, it's an intent to deceive the consumer by luring the consumer into buying the product based on false representations as to the benefits of using the product. And to me, that's almost indistinguishable from a fraud claim. Well, but if you look at the case law— and I did not know I was going to be discussing this particular element, what I considered to be sort of a—I assumed. Fraud under the UCL and CLRA is not common law fraud. It doesn't require clear and convincing evidence. And the intent is not the intent to defraud. It's a simple, almost strict liability intent. Did you intend to make this statement? Regardless of whether it was false or true, did you intend to make this statement? And did you put it on your—in this case, your product label? That's the intent. And it's not the higher intent that you might see in a common law fraud case. Should we certify this question to the California Supreme Court? I would prefer you didn't. But, you know, I'm not so sure that's not a bad idea because, quite frankly, I'm not sure that King Bio was correctly decided because I've read that opinion probably 30 times now. I mean, the problem with this case is it presents a question of substantive California law, and we are not the ultimate expositor of what California substantive law is. Is there anything in California law that would support the GNC's approach? I didn't see anything cited by either party. So, in other words, normally when we certify a question, it's because it's an open issue in California law and there are cases going either way, or there's a very old case and a very new case. And here I saw nothing in California law supporting that proposition. Are you aware of anything? No, and it actually has to do with CAFA, but that's a longer explanation. What happened was is that Consumer Fraud Class Actions left state courts around the time that King Bio was rendered, and there really hasn't been much done. I don't think there's any other higher court other than the King Bio Court that has ruled on this question. So the King Bio actually addressed a different question, which is can the plaintiff shift the burden to the defendant to substantiate their claim, and King Bio said, no, they can't. Only a prosecuting authority can do that. They didn't say anything about how the plaintiff has to prove up its claim and whether the defendant can defeat that by showing any evidence at all. I would say, no, it didn't expressly, but I would say if you understand the procedural posture of the case, they did set down three things that a plaintiff could prove his or her case upon. I see I'm out of time. And obviously in that procedural posture, they pronounced that if the plaintiff had done one of these three things, they would have gotten to the jury. I will give you a minute for rebuttal. Thank you very much, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. William Delgado on behalf of Defendants at Belize. Your Honor, there are at least three bases on which this Court can affirm the District Court. One is a narrower basis that relates to the plaintiff's failure of proof with respect to a concession that they made at class certification. And I was going to start my argument there, and I want to circle back to that position. But there was something that the plaintiff said just now that I need to address immediately, and it is this position that their case is one where they allege that the claim was misleading. That is not the case. While it is true that they used the word misleading in their pleadings and perhaps during the briefing on summary judgment, they never alleged a misleading claim in the way that the law recognizes. In order to allege a misleading claim under California law, a plaintiff must first admit that the claim as it appears on its face is literally true, but nevertheless misleading in some other way, because, for example, it omits certain information that a reasonable consumer would find material. Here, the plaintiff never alleged that the claims on the label of this product that is being challenged were literally true. Absent that allegation, absent that argument, it is not a misleading claim. And if it is not a misleading claim, the plaintiff's basis on which to distinguish GNC goes away. So is it not the case that they could, perhaps they didn't do that here, but that they could argue in the alternative? So they could say the claim is false, but if it's true, then it's misleading. I suppose under the concept of pleading claims in the alternative, a different plaintiff in some other case could plead something along those lines, that a claim is literally false on its claim or in the alternative, true but misleading. But as the district court pointed out in this particular case, they couldn't have done so because to plead that the claim was literally true would take away from the argument, the only argument that they put forward, that the claims were literally false because of whatever reasons that they put forth. So there was, you're saying there was no claim or argument made in the district court that even if the claim was literally true, it was misleading? There was no claim of that sort? I apologize, Your Honor. Yes, that is correct. They never made that claim. So let's assume you're right, that it's misleading for the plaintiff to say he had a misleading claim. Take us back to the GNC opinion. Is there anything in that GNC opinion for the Fourth Circuit where they predict what the California Supreme Court would do as to the proper standard for evaluating evidence? Your Honor, I believe that the case itself, the proposition ultimately is a prognostication of what the California Supreme Court would do. But did they say that? They didn't say that, but they didn't need to. Didn't they rely upon generally Federal issues and claims? I mean, if you're going to predict what some state Supreme Court would do, wouldn't you say the standard is to predict what the state Supreme Court would do? I think, Your Honor, under the Erie Doctrine, they were required to do that. But didn't say it. You're right. They didn't say it, but I don't think that's a distinguishing factor. I mean, the Federal Court was cognizant of what it is that they had to do because they were ruling on an issue of California law. Well, there were multiple states, right? It was a multi-state class action. But when they reached that issue, they were looking at California law specifically. And, again, because of the Erie Doctrine, they had to have, by definition, they had to have been prognosticating what the California Supreme Court would have done. But going back to the question that Judge Tallman raised about certifying this question, I always have a concern because California doesn't always accept our certified questions. And so I was wondering whether there's anything in California law, putting aside King-Bio, which I know the briefs rested on and disagreed about, that would support GNC's prediction. Your Honor, I think the answer to that question is I don't know that it is an issue of California law. The premise that a plaintiff cannot succeed under a falsity claim of action when there is an equivocal science or when the defendant is relying on valid scientific evidence is kind of what I would call a common-sense proposition. It's one that this Court adopted back in Ray Rigel, which, although it's not a consumer class action, it's a similar proposition. In that case, the plaintiff was alleging that the defendant made a false representation in a press release because they relied on a study that the plaintiff claimed was statistically inaccurate. And they claimed that they should have relied on a different statistical study. And that Ninth Circuit opinion basically said that's not falsity. That is a decision to go with one study versus another. That's just a difference in two permissible judgments. But that is not falsity. That proposition, that it is not literal falsity when the science is equivocal, when the defendants can rely on a valid scientific study, was adopted, like I said, in Ray Rigel. But it also other district courts and as well most recently by a panel of this court last year in the Otto case where the panel actually cited it in Ray GNC for that very basic proposition. Is your answer the same if the burden of persuasion is simply preponderance of the evidence? Are you using equivocal to mean equipoise? Or if it's equivocal, why couldn't a jury decide by 51% that the plaintiff's expert has the better argument? Because, Your Honor, that depends on how you frame the question for the jury. What is the jury deciding at the end of the day? The plaintiff would like this Court to believe that the jury at the end of the day is deciding does Ginkgo work. That is not what the jury is deciding at the end of the day. At the end of the day, the jury would be given jury instructions on the three statutes or excuse me, the two statutes that relate to false advertisement that the plaintiff in this case claimed had been violated. And the question to the jury would not be does Ginkgo work, but rather was the statute violated because the advertisement was false? But the jury still has to be told what standard must apply to the facts that they find. Right, and the plaintiff would have to show by a preponderance of the evidence that the advertisement was false. So you don't disagree that a claim can be false even if there's a scientist that says otherwise. I mean, in other words, a claim can be literally false even if there's a scientist somewhere who disagrees. You don't disagree with that, do you? Or you're using false in a unique sort of way. Well, I'm not sure I understand the question. A claim can be literally false if there is an invalid scientific study, for example. So a claim could be literally false, but there's a scientist that says otherwise. And so I guess we could say that that scientist is mistaken or the scientist's study, it turns out, wasn't peer-reviewed correctly or whatever it is. But the claim could still be false regardless of that scientist making a different argument. I think in re-GNC and the idea of falsity... Could you just answer that? Do you disagree with that? A claim can be literally false regardless of a scientist somewhere saying differently. I'm having trouble with that question, Your Honor, and here's why. It depends on the validity of the scientist that you're referring to. That's what you said. Okay, so a claim can be literally false if it relies on invalid science. If there is just some random scientist out there that is not a reasonable scientist or is putting forward... And that's what the jury decides. That's what creates a fact issue, right? That's what the jury is deciding. No, Your Honor, because in this set of circumstances, when there is a valid scientific study and the district court can find that the scientific studies were valid under Daubert, then what happens is... I don't understand why the jury wouldn't be entitled to do that. There's nothing that I saw in California law that would say they couldn't determine that the scientist's claims were erroneous. Well, again, Your Honor, if it survives Daubert, then under the other cases that I've discussed, a claim cannot be literally false because it's based on valid scientific... Well, what do you base that on? Is there anything that says that if a district court allows an expert to testify, then you can't find... the jury could not find that expert to be false? Well, again, I would come back to N. Ray Rigel and the premise that where you have competing judgments, there is not a basis on which to find falsity. Well, but if the plaintiff's expert is eminently qualified and the defense experts are not, and the jury finds that it believes the plaintiff's experts that junk science supports the defendant's expert's claim, why couldn't they then determine that the claim is literally false? Because what you're contemplating, Your Honor, is not a decision on truth or falsity, but a decision on whether or not the claim is substantiated. This idea of measuring the evidence and looking at the totality evidence... I don't see why that's the case. I mean, the substantiation cases just say for the prosecuting authority, they can require the defendant to substantiate their claim. Here, the plaintiffs have come in with evidence, and Judge Tallman's hypothetical. The plaintiffs have come in with evidence by experts saying that the claim is true and that the defendant's experts are relying on junk science, which is not true. And the jury believes that. The jury credits that. So therefore, the claim is false or is true. Why can't the jury do that? Your Honor, so when I use the word substantiation, I'm not referring solely to that premise that comes up in King-Bio. I'm using that word as it is understood in this industry. The idea that you look at the totality of the evidence and you measure the quality of the evidence, these are all concepts that come from an FDA guidance on how advertisers can substantiate their claims. That's in the excerpts of record at page 537. These are all concepts that are implicitly and inextricably tied to the concept of substantiating a claim. Is the defendant's or the advertiser's evidence good enough? And that is not the type of claim that we have here. Again, that's not the type of claim that the jury would decide at the end of the day. The jury in this case does not decide whether or not the claims are substantiated. They are trying to decide whether or not the advertisement was false. Okay, so they're not, we agree, I agree with that. The jury is not determining substantiation. They're trying to determine if the claim is false. And if the expert says the claim is false and the defendant's experts can't be believed, why doesn't that get us to the jury could therefore decide the claim was false? I think it comes back to the idea of falsity and whether or not truth and falsity, as the district court below found, are binary things that exist in the abstract, as opposed to just determinations that a jury renders after deciding which side was or was not more persuasive. If one believes that truth and falsity are principles that exist in the abstract, a plaintiff can never carry their burden by preponderance of the evidence that shows that an advertiser's claim was false when it is rooted on valid science. But I'm still having problems with my hypothetical, because I don't understand analytically why a jury cannot totally discredit the defendant's scientific evidence and totally credit the plaintiff's evidence and reach the conclusion that the advertising claim is totally false. Again, Your Honor, I think that goes back to what does falsity mean? What does it mean to put out a false advertisement? Let me give you a little more concrete example. Suppose that your client was offering for sale and selling for $35 a liter mineral water and offering it as a cure for Alzheimer's disease. And the experts come in and say that is total snake oil. And the jury concludes that there's absolutely no scientific basis that mineral water bottled at the source does anything for somebody suffering from Alzheimer's disease. Wouldn't that be a false advertising claim? That would, and that would probably be one that gets to the jury, but that's because the defendant in that case probably would not have a single valid scientific study that said that mineral water is a cure for Alzheimer's. Well, suppose that they did. I mean, suppose they proffered one, but the jury simply didn't buy it. Your Honor, that hypothetical is extremely difficult. To come up with a valid scientific study that survives Daubert, that mineral water is a cure for Alzheimer's, that's just not a, I apologize, that's just not a hypothetical that would ever survive. Actually, in a criminal case, those were the facts. Okay. Well, so I'm having difficulty with it. The guy sold $12 million worth of this stuff at $35 a liter over a five-year period. I mean, we've all seen scientific, we've all seen experts who are able to frame opinions in a way that's supporting to their clients, so I don't think the hypothetical is that far-fetched. Well, Your Honor, I think the difference here, though, is that what we're talking about in this case are studies that predated the litigation that were conducted by independent scientists. All right, but that's just whether there's a genuine issue of material fact and whether the jury, it should go to the jury to weigh those exact arguments. If I may, can I circle back to the original argument that I wanted to make on the failure of proof with respect to diseased populations? Because that is an alternate basis for affirmance, and it's actually the narrower and easier one. During the class certification process, the defendants pointed out that the class definition that the plaintiff gave was overbroad because it comprised a number of different types of people and the common answer that would be generated in response to that class definition could not be reached. Rule 23 would not be satisfied. In response, the plaintiff said that they could generate a common answer because they were going to show that Ginkgo was inefficacious as to everybody. In other words, it was falsely advertised as to everyone because it did not work for anyone. They never showed that. The plaintiff never put in any evidence that Ginkgo was inefficacious as to certain populations, namely diseased populations. And not only did they fail to show that, but also defendants put in evidence to show that it was efficacious to those populations. And just as the RICO score in the Sixth Circuit pointed out, when the plaintiff says that they are going to show that the product does not work for anyone and they fail to carry that burden, that means that they lose at the merit. Thank you. Thank you. Thank you. All right, I'll try to talk fast, and I'm going to start backwards. The evidence in the record regarding diseases is actually conclusively in favor of the plaintiff. The plaintiff's expert conclusively stated the obvious, which is that Ginkgo biloba does not treat Alzheimer's disease or any of these other related brain diseases like dementia. He's the only one who opined on the issue, because when I asked defendants' experts, when they cited these old Alzheimer's cases that had been debunked, they said, oh, no, we're just citing them. We're not opining that it's effective. So there's no evidence supporting that this works for anybody. And quite frankly, if Ginkgo biloba treated Alzheimer's disease, it would be the miracle drug. Science has been looking for 40 or 30 years for a cure. Ginkgo's not it. And that's actually Your Honor's leader of water hypothetical. But this case is precisely one where a highly regarded expert has come up and said, with detailed discussions, why this stuff doesn't work as represented. And they haven't rebutted it. And it should go to a jury at a minimum. Thank you. Thank you. We thank both parties for their arguments. And the case of Carolstein v. Costco Wholesale Corporation is
judges: Tallman, Ikuta, Bough